KERMIT E. FERRER, Plaintiff and Appellee, *v.* ALLIANCE COMPANY OF P.R., INC., and ST. PAUL FIRE & MARINE INSURANCE CO., Defendants and Appellant the latter.

No. R-64-244.     Decided January 4, 1966.

2

*Rivera Zayas, Rivera Cestero & Rúa* for appellant. *Luis A. Lugo, Jr.,* and *L. C. Delucca* for appellee.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The accelerated pace in the construction of public and private works during the last decades has required the constant attention of this Court in the interpretation of the terms of the performance bonds issued for such contracts. In *Cristy & Sánchez* v. *Commonwealth,* 84 P.R.R. 226 (1961),

departing from our former interpretations[1] based on the non-existent contractual relation between the sureties and the persons furnishing the building materials and labor, we held that the bonds required by the State in a public-works contract are for the purpose of protecting the Commonwealth against any direct claim for nonpayment of materials or labor used or employed in the work, and that, whenever under the terms of the contract the contractor is permitted to assign or subcontract part of the work, the subcontractor may recover on the bond given for the benefit of the State the price of the materials and the payment of labor used or employed in the execution of the subcontract.[2] In the field of *private-works* construction, *Aníbal L. Arzuaga, Inc.* v. *La Hood Construction, Inc.*, 90 P.R.R. 101 (1964), begins to elaborate on the local rule. After invoking the second paragraph of § 1209 of the Civil Code, 31 L.P.R.A. § 3374, as well as the gloss of uniform construction on the stipulations of third-party beneficiaries, we adopted the rule citing from Restatement, Security, § 165, that where a surety for a contractor agrees that the latter will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor and materials have a right of action against the surety as third-party beneficiaries of the surety's contract, *"unless the surety's contract in terms disclaims liability to such persons."* (Italics ours.) In *Ulpiano Casal, Inc.* v. *Totty Manufacturing Corp.*, 90 P.R.R. 719 (1964)—*public-works* contract— we extended liability of a surety company for payment to a subcontractor in accordance with contract the text of which

---

[1] *Battle* v. *Pereyó*, 67 P.R.R. 621 (1947); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932); and *Municipality of Fajardo* v. *Axtmayer et al.*, 31 P.R.R. 780 (1923) were expressly overruled.

[2] At present the right of workers and materialmen to file claim on the bond posted for a *public-works* contract is unquestionable, irrespective of the text of the bond, since there is an express statutory provision authorizing such claims. Act No. 388 of May 9, 1951, 22 L.P.R.A. § 47 *et seq.*

did not make express mention of the payment of materials and labor, but of the faithful performance—execution—of the stipulations, terms, and conditions of the covenant. And in *Goss* v. *Structural Concrete Products*, 92 P.R.R. 378 (1965) we decided that a bond securing the payment of materials and labor covered the payment for rental of a mechanical contrivance and its transportation to the site of the *private work*.

Now we confront a new modality of bond which we had not considered before.[3] Let us turn to the facts.

The Alliance Company of P.R. Inc., subcontracted the installation of the sewer and other services, such as the plumbing, fire protection system and the water heaters in the project for the construction of 311 units in a 14-story building known as *El Monte*, the construction of which was awarded to the H.R.H. Construction Co. On September 26, 1961, a bond was posted by the Alliance, as principal or obligee and the St. Paul Fire and Marine Insurance Co. as surety, in favor of H.R.H. Construction Co., as beneficiary, the binding clause of which reads:

"Now, therefore, The Condition of This Obligation is Such, that, if the said Principal [Alliance] shall faithfully perform the work contracted to be performed under the Subcontract and shall pay, or cause to be paid in full, the claims of all persons performing labor upon or furnishing materials, appliances, teams or power contributing directly to the performance of the Subcontract, then this obligation shall be void, otherwise to remain in full force and effect."

This obligation was contracted, subject, among others, to the following conditions:

"Third: That no right of action shall accrue hereunder to or for the use or benefit of any other than the Obligee [H.R.H.

---

[3] We note that in the following discussion a subcontractor is considered in his relation to the contractor as a materialman or worker. Restatement, Security, § 165, commentary f.

Construction Co.] as named herein, and the rights and interests of the Obligee hereunder may not be assigned or transferred without the prior written consent of the Surety."█

Kermit E. Ferrer, subcontractor of Alliance, filed a complaint against the latter and the St. Paul claiming the balance of the amount due for the construction of the pluvial sewer and the exterior water system in the aforementioned project. Timely he requested summary judgment on the basis of the performance bond. To establish the existence and subsistence of the debt, he attached a certified copy of the statement of the debts admitted by Alliance in a bankruptcy proceeding as well as a sworn statement of the plaintiff. It was expressly alleged that although the obligation in the bond was made in behalf of H.R.H. Construction Co. and that the third clause copied above limits to said obligee the right to any cause of action, Ferrer can recover on the liability agreed upon by virtue of the bond, "being a third party in whose favor a benefit has been stipulated." The surety company filed a motion of opposition. It did not attach counter affidavits. Summary judgment was entered relying on *Arzuaga* v. *La Hood, supra,* and *Ulpiano Casal, Inc.* v. *Totty Manufacturing Corp., supra,* and incidentally stating that the third clause restricting the right to a cause of action under the terms of the bond was "null and void". This averment was not supported by any authority.

█ It has been uniformly decided that the condition incorporated in a bond limiting the right to any claim to the obligee named therein—Restatement, *supra,* § 165, calls him creditor—clearly establishes that the parties did not intend to extend their benefits to those outside the contract. *Hopper Bros. Quarries* v. *Merchants Mutual Bonding Co.,* 255 F.2d 147 (8th Cir. 1958), and cases cited at p. 148;

*Westinghouse Electric Corp.* v. *Mill & Elevator Co.*, 118 N.W.2d 528 (Iowa 1963); which cites approvingly but distinguishes the leading case of *Bourret* v. *W. M. Bride Construction Co.*, 84 N.W.2d 4 (Iowa 1957); *Century Indemnity Co.* v. *Esso Standard Oil Co.*, 79 S.E.2d 625 (Va. 1954), and cases cited at pp. 629 and 630; *Massachusetts Bonding & Ins. Co.* v. *United States R. Corp.*, 97 S.W.2d 586 (Ky. 1936). See also 17 Am. Jur.2d Contractor's Bonds §§ 21, 81 and 83.

*Arzuaga* v. *La Hood, supra,* does not hold a contrary decision, for, as we stated at the outset of this opinion after setting forth, citing Restatement, *supra,* the general rule determining the liability in favor of the materialmen and workers, it expressly makes the exception that it is so, "unless the surety's contract in terms disclaims liability to such persons." Commentary (c) of Restatement, at p. 459, states that "The surety is not liable to laborers and materialmen, even if he guarantees to government or a private owner that the contractor will pay for labor and materials, if the surety in terms provides in his contract that his liability is only to the creditor with whom he contracts. The surety in general is bound only on the contract he makes, and if he excludes any purpose to benefit those outside the contract, there will be no third party beneficiaries . . ."

In the annotation *"Right of person furnishing material or labor to maintain action on contractor's bond to owner or public body, or on owner's bond to mortgage,"* 77 A.L.R. 21, 77, the prevailing rule is stated in the following terms:

"The courts seem to be generally agreed that a laborer or materialman cannot recover on a contractor's bond to the owner, unless the parties to the instrument contemplated some benefit to such third parties; and the trend of the decisions is to make the rights of laborers and materialmen dependent upon an intention of the parties to protect them. *It would be difficult to imagine a more unequivocal mode of negativing any such inten-*

*tion to benefit third parties than an express stipulation in the instrument to the effect that it is for the sole benefit of the obligee named therein.* Accordingly, it is held that, in the absence of statute, a laborer or materialman cannot recover on a private building contractor's bond to the owner, where the bond expressly provides that it is for the sole benefit of the owner, or that no one other than the owner shall be entitled to maintain an action thereon."

*Metropolitan Casualty Ins. Co.* v. *Texas Sand and Gravel Co.,* 68 S.W.2d 551 (Texas 1954), states, in our opinion, the best doctrine applicable to the situation under consideration. It dealt with a bond signed by the Metropolitan Casualty Insurance Co., which guaranteed Leach, a contractor, that subcontractor Murdoch would well and truly perform all the terms and conditions of the subcontract and would pay all claims for labor performed and materials furnished for the performance of said subcontract. Claims could only be filed against the subcontractor. Strain, who furnished labor, filed claim, among others, against the surety company, for payment for services rendered. The Court said:

"It will be noted that Strain [the furnisher] is not named as a payee in the bond, and that said bond does not, by express terms, provide that it is given for the benefit of any one other than Leach [the contractor]. If the furnishers of labor and material were made beneficiaries under said bond, it was by virtue of the terms of the defeasance clause, which provided that, if Murdoch [the subcontractor] 'shall pay all claims for labor and material furnished, . . . then this obligation is to be void.' *The effect to be given to such a defeasance clause depends on the intention of the parties.* In ascertaining such intention, considerable weight is usually given to the question as to whether or not the provision in question was or was not necessary for the complete protection of the payee named in the bond. *If such provision was necessary to the complete protection of the named payee, then the bond is generally construed as an indemnity bond for his protection only.* [Citations.] *If such provision was not necessary for the protection of the payee,* then the bond, under some circumstances, *may be con-*

*strued as inuring to the benefit of the laborers and material-men."* (Italics ours.)

■ In other words, to favor the construction that the bond only undertakes to indemnify the contractor there should exist the possibility that the latter sustain a loss by surety's breach of the obligation for the payment of labor and materialmen. *Rowe* v. *Stufflebeam*, 89 N.W.2d 875, 879 (Iowa 1958), explaining the aforecited leading case of *Bourret* v. *W. M. Bride Construction Co.*, *supra*, and in the absence of said economic prejudice, the language of the bond must be taken as indicating an intent to protect the gratuitous beneficiaries, *American Surety Co. of New York* v. *Smith*, 130 So. 440, 443 (Fla. 1930).

■ All these doctrines have arisen as a result of legislation in state jurisdictions establishing mechanics' liens and materialmen's liens. *Wolverine Insurance Company* v. *Phillips*, 165 F.Supp. 335 (D.N. Iowa 1958); Restatement, Security, p. 459. The purpose of the bond is generally to secure the owner in the event that, if the contractor defaults, he becomes liable for the materials furnished and labor used in the work. In that way alone is his property secured from liens, and therefore, to avert an economic prejudice or loss he is protected by requiring the contractor to post a bond. In Puerto Rico by virtue of the interaction of § 10 of Act No. 379 of May 15, 1948, 29 L.P.R.A. § 279 (Supp. 1964, p. 190),[4] and § 1 of Act No. 73 of May 4, 1931, 29 L.P.R.A.

---

[4] "In building, reconstruction, repair works, or works for the improvement of property, done by the job and in any other work in which contractors, subcontractors, *ajustadores*, foremen, or any agent or representative of the employer intervenes, the employee shall also be entitled to additional compensation on the basis of the double wages that this Act fixes for extra hours of work.

In these cases the owner, or the person for whom the works are constructed or the work is done, shall be liable jointly with the contractor, subcontractor, *ajustador*, foreman, agent or representative of the employer, for the payment of the wages earned in regular hours and extra hours of work; . . . ."

§ 186,[5] a lien is established in behalf of the workers of the construction industry. There is no such provision for the benefit of the materialmen,[6] and, hence, the owner of the work runs no risk if they are not paid for the materials furnished, except for the limited responsibility arising from § 1489 of the Civil Code, 31 L.P.R.A. § 4130, providing that "Those who furnish their . . . materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought." But evidently, this provision does not expose to any patrimonial damage. Therefore, we decide that in relation to the materials used in the work, the restrictive condition as to the owner's right to a cause of action does not weaken the validity of the stipulation contracted by virtue of the binding clause in favor of third-party beneficiaries or gratuitous beneficiaries.

■ Applying the same reasoning to the amount due for labor, and in view of the existence, for the owner, of the risk of the mechanics' lien, a different solution would operate, since the bond is construed solely for the benefit of the named beneficiary. However, another fact enters into the picture which may lead to a different decision. Act No. 111 of June 22, 1961, 29 L.P.R.A § 195 *et seq.* (Supp. 1964, p. 127), effective 90 days after its approval, that is, September 20, 1961, requires the posting by "[a]ny contractor in charge

---

[5] "Whenever a worker or employee works on the construction, extension, maintenance or repair of any improvement, house or building, the total amount of the wages earned by him shall constitute a lien on said property, both when the work is done under the immediate direction of the owner and when contractors, subcontractors, jobbers, or builders intervene.

"With the exceptions provided by law, the said lien shall have preference as to payment over all other debts of the property owner."

[6] In Minnesota, Surety's state of origin, the law provides liens in favor of the workers as well as of materialmen, M.S.A. § 514.01 but the bond contract is governed by the local rule, *Maryland Casualty Co.* v. *San Juan Racing Ass., Inc.*, 83 P.R.R. 538, 544 (1961).

of the construction, reconstruction, extension, modification, or repair of a work, building or structure whose estimated cost . . . is greater than $15,000 . . . [of] a payment bond in favor of the Secretary of Labor . . . [to answer] . . . for the payment to the contractor's laborers and employees *of the wages earned by them in the work.*" Subsequently, § 5, 29 L.P.R.A. § 197 (Supp. 1964, p. 128), provides that "Any person having a direct contractual relation with a *subcontractor, regardless of whether or not he has any express or implicit contractual relation with the contractor of the work, shall have a chose in action* against the contractor, *the bond of the contractor*, the sureties of the contractor, or against any of them, to recover in full or in part any sum due him by the subcontractor of the work for salaries earned as employee of the subcontractor of the work." It is true that said Act, by its own terms, apparently grants the workers the right to sue, but for the purpose of the obligation under the bond we have already decided that the subcontractor who, in the performance of his subcontract, furnishes and pays for labor, is in the same position of a worker. We had already anticipated in *Cristy & Sánchez* v. *Commonwealth, supra*, pp. 229–230, that when the bond is required by express provision of the law, the description of the parties actually guaranteed must not be read separately in the bond instrument, but it should be taken together with the terms of the contract and the statutory provisions. And we added: "Where policies are required by statutory provision, the statute is considered as forming part thereof." Therefore, in the present case, if *by virtue of the terms of the subcontract* of Alliance said subcontract would include as one of the obligations assumed, compliance with the applicable laws, the condition of the oft-mentioned third clause would have to yield to the law which grants a direct cause of action to the persons furnishing labor for a contract. The limitation

as to the right of action could not prevail, and independently from the intention of the parties to exclude third parties from their benefits, the solution decreed by law would prevail.

The bond in the case at bar was given on September 26, 1961, when Act No. 111 was already in force. Now then, as in the incident of the summary judgment the subcontract in relation to which the bond was posted was not introduced, we are not in a position to determine, without running the risk of committing error, the scope thereof in the light of the law and the contractual obligations assumed.

The judgment rendered by the Superior Court, San Juan Part, on October 21, 1964 will be set aside, and the case remanded for further proceedings consistent with this opinion.