**RUSH PRESBYTERIAN ST. LUKE'S MEDICAL CENTER, Plaintiff-Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant-Appellee.**

No. 86–1435.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1987.

Decided Aug. 5, 1987.

Robert J. Rubin, Jodi Landsman, Kornfeld, Altheimer & Gray, Chicago, Ill., for plaintiff-appellant.

Paul Mathew Glavin, Pretzel & Stouffer, Chartered, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

MANION, Circuit Judge.

This matter is before the court on an appeal by plaintiff Rush Presbyterian St. Luke's Medical Center ("the Medical Center") from an order dismissing its complaint against defendant Safeco Insurance Company of America ("Safeco"). We affirm the district court's decision.

## I. NATURE OF THE CASE

Taking what the complaint alleges as true, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), the Medical Center hired Morse/Diesel, a general contractor, to manage a construction project. Morse/Diesel in turn entered into a subcontract with defendant WindowMaster to fabricate and install curtainwall. As required by that subcontract, WindowMaster obtained a performance surety bond ("the bond") from defendant Safeco for the subcontract amount naming WindowMaster as principal and Morse/Diesel as obligee.

The complaint alleged that Safeco knew that Morse/Diesel, the obligee, was acting as the Medical Center's agent and that Morse/Diesel obtained the bond for the Medical Center's benefit. The bond, however, provided that "[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named herein...."

## II. NATURE OF THE PROCEEDINGS

After WindowMaster produced defective curtainwall panels, the Medical Center sued WindowMaster for nonperformance (Count I) and Safeco to recover on the bond (Count II). Safeco, relying upon the "no right of action" clause's plain language, moved to dismiss Count II. The Medical Center opposed Safeco's motion, contending that as the obligee's disclosed principal, it could enforce the obligee's bond rights.

On February 6, 1986, the district court entered a memorandum opinion and order granting Safeco's motion and dismissing Count II. *Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co. of America*, No. 85 C 8998 (N.D.Ill. Feb. 6, 1986) [Available on WESTLAW, DCT database]. The district court subsequently entered final judgment for Safeco under Fed. R.Civ.P. 54(b); appellate jurisdiction has thus been properly invoked pursuant to 28 U.S.C. § 1291, if federal jurisdiction exists.

## III. FEDERAL JURISDICTION

The Medical Center's complaint alleged diversity of citizenship as the sole basis of federal jurisdiction in this case. The complaint stated that the plaintiff Medical Center is "an Illinois not-for-profit corporation," that defendant Safeco is a "Washington insurance corporation" and that defendant WindowMaster is a "Florida corporation."

In measuring diversity of citizenship, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c). "[W]hen one corporation sues another and the only basis of federal jurisdiction is diversity, the plaintiff must allege both the state of incorporation and the state of the principal place of business for each corporation." *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 529–30 (7th Cir.1985).

To allege that a party is an "X-state corporation" merely advances the pleader's conclusion and does not, without more, inform the court under which state's laws the party was incorporated. Official Form

2(a), Forms Appendix of Federal Rules of Civil Procedure, and Circuit Rule 28(b)(1) assist the practicing bar in reading § 1332(c). *Buethe v. Britt Airlines, Inc.,* 787 F.2d 1194, 1195 (7th Cir.1986). Form 2(a) demonstrates that one properly invokes jurisdiction by alleging, according to the example provided, that a corporation is "incorporated under the laws of the State of Connecticut having its principal place of business in the State of Connecticut." Circuit Rule 28(b)(1)—which became effective after the parties had filed their appellate briefs—accords with the plain meaning of § 1332 and expressly demands that the "state of incorporation" be noted in the jurisdictional statement required in briefs filed in this court.

Adhering to § 1332(c)—as illustrated by Form 2(a)—serves a practical purpose. Often, a complaint drafter will call an opposing party an "X-state corporation" merely because its principal place of business is in X. Requiring the state of incorporation to be alleged precisely forces the drafter to review the historical record and inform the court under whose laws the corporation was incorporated.

Here, because the complaint's "X-state corporation" allegations were followed by an allegation as to the party's principal place of business, and because Circuit Rule 28(b)(1) postdates the briefs, we conclude that plaintiff meant to allege that each party was incorporated under the laws of X-state. *See Casio,* 755 F.2d at 529. *Cf. Buethe,* 787 F.2d at 1195. Therefore, federal jurisdiction exists.

### IV. ANALYSIS

#### A. Choice of Law

On the merits, neither party, in this court or in the district court, has discussed choice of law. This omission is magnified because Count II presents a claim filed in the Northern District of Illinois by a Chicago hospital against a surety located in Seattle under a bond entered into in Miami with a "Florida corporation." The district court applied Illinois law, and neither party protests this choice, or even raises the issue. "When the parties fail to consider the choice of law in a diversity case, the substantive law of the forum is presumed to control." *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 681 n. 33 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987), *quoted with approval in Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir.1987). While the Medical Center cites *Crane v. United States,* 73 Ct.Cl. 677, 55 F.2d 734, *cert. denied,* 287 U.S. 601, 53 S.Ct. 7, 77 L.Ed. 523 (1932), it does so not as the governing law but for what it hopes will be that opinion's persuasiveness; the Medical Center does not and can not contend that the Illinois Supreme Court would apply District of Columbia law here. Accordingly, we deem the parties to have stipulated that Illinois law reasonably governs this matter.

#### B. "No Right of Action" Clause

█ In interpreting Illinois law, the district court properly relied upon *Young v. General Ins. Co. of America,* 33 Ill.App.3d 119, 337 N.E.2d 739 (1975) for this conclusion:

Although *Young* was decided in the context of a third party beneficiary theory, the reasoning used has equal applicability here. The court does not question the general rule that a disclosed principal may enforce rights under an agreement entered into by its agent. However, where the agreement unambiguously and unequivocally sets forth the intention of the parties to limit the right to bring an action on the agreement, the general rule is inapplicable.

In the instant case, Safeco and Morse/Diesel limited the right of action under the bond to Morse/Diesel. Because such limitation clauses are valid and enforceable, *Young, supra,* Medical Center has no standing to bring an action under the bond.

*Rush Presbyterian St. Luke's Medical Center,* No. 85 C 8998, slip op. at 4.

"[W]e are obliged to give substantial weight to determinations of state law made by a federal district judge who sits in that state," *Johnson v. Consolidated Rail*

*Corp.,* 797 F.2d 1440, 1446 (7th Cir.1986), and here Chief Judge McGarr interpreted Illinois law correctly.

In *Crane v. United States,* 73 Ct.Cl. 677, 55 F.2d 734, *cert. denied,* 287 U.S. 601, 53 S.Ct. 7, 77 L.Ed. 523 (1932), the Court of Claims held—under District of Columbia law—that a disclosed principal could bring a claim under a bond to which it was not a party. 55 F.2d at 739. The district court distinguished *Crane* on grounds that the bond there did not contain a "no right of action" clause. The Medical Center protests on appeal how the district court distinguished *Crane.* Noting that the bond in *Crane* was executed under seal, the Medical Center argues that under "then-applicable law" (without specifying whose law), a contract—of which a bond is a subset—under seal was equivalent to one limited by a "no right of action" clause because neither could be enforced by a non-party.

Construing the Medical Center's argument as an invitation to look at how Illinois courts treated contracts under seal, we are convinced that Illinois courts at the time *Crane* was decided would have decided *Crane* differently. "The rule that a principal may sue on contracts made by his agent in his own name, does not apply to cases where the contract is executed under seal. There the rule is that the suit must be brought in the name of the party who is named as covenantee." *Equitable Life Assurance Soc'y of the United States v. Smith,* 25 Ill.App. 471, 474 (1888). *See Walsh v. Murphy,* 167 Ill. 228, 47 N.E. 354, 354 (1897). Today, when a seal no longer matters, Ill.Ann.Stat. ch. 30, para. 153b (Smith-Hurd 1969), but a bond's unambiguous language does, the district court properly analyzed the "no right of action" clause as limiting general agency principles which otherwise would have applied.

Each party shall bear its own costs.

Judgment for Safeco is

AFFIRMED.