**ABC INTERNATIONAL TRADERS, INC., Plaintiff,**

v.

**BEVERLY BANK–MATTESON, etc., et al., Defendants.**

No. 88 C 6162.

United States District Court, N.D. Illinois, E.D.

July 22, 1988.

---

Jeff Berke, Haines, Russ, McMurry & de Recat, Los Angeles, Cal., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

ABC International Traders, Inc. ("ABC") has just filed a nine-count Complaint against Beverly Bank–Matteson d/b/a Matteson–Richton Bank ("Bank") and Rhoderic Williams d/b/a Spectrum DJ Supplies ("Williams"). Because ABC's Complaint does not establish the complete diversity of citizenship necessary for federal jurisdiction, this Court is required to dismiss the Complaint sua sponte.[1]

Complaint ¶ 1 properly identifies both components of ABC's corporate citizenship under 28 U.S.C. § 1332(c)[2]: California is both its state of incorporation and the location of its principal place of business. But Complaint ¶ 2 does not provide the same necessary allegations as to Bank (see *Rush Presbyterian St. Luke's Medical Center v. Safeco Insurance Co. of America*, 825 F.2d 1204, 1205–06 (7th Cir.1987)). As for Williams, Complaint ¶ 3 speaks of his *residence* rather than his *citizenship*, the relevant fact for diversity purposes.

Those pleading defects deprive this Court of independent subject matter jurisdiction over this action, for federal courts can deal with cases only as Congress specifies (see Section 1332(a) and (c)) and as a plaintiff's express allegations bring the case within those specifications. See, e.g., 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1208, at 85 & n. 96, 87 & n. 99, and cases cited in both notes (1969 ed. and 1987 supp.); 13B *id.* § 3611, at 516–18 & nn. 27–29, § 3624, at 610 & n. 20, and cases cited in all those notes (1984 ed. and 1987 pocket part). Federal jurisdiction cannot be based on surmise or guesswork.

Ordinarily this Court accompanies this type of order of dismissal—even though mandated because of the want of jurisdiction—with an order granting plaintiffs leave to plead over without incurring the

---

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. All further references to Title 28's provisions will simply take the form "Section—."

burden of paying another filing fee (see Section 1653). But in this instance that degree of consideration does not seem called for because of other problems that leap out from the face of the Complaint. Indeed, those other problems are of a nature that might perhaps be characterized as "less technical" because some (or perhaps all) of them are so clearly noncurable.[3]

■ As for Williams, ABC's claims against him are for breach of contract (Count 8) and goods sold and delivered (Count 9), in each instance with damages under $2,000.[4] Because the necessary jurisdictional amount is lacking, ABC must depend on pendent party jurisdiction as to Williams—but that is not a viable theory in this diversity case (*Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179, 187 (7th Cir. 1984)). Accordingly Williams would have to be dismissed as a defendant in all events, even if the Complaint could stand against Bank.

■ As for Bank, it may be accepted that ABC is an aggrieved party, because it sold Williams nearly $2,000 of merchandise and remains unpaid because Bank refused to honor one of its own cashier's checks (Complaint ¶¶ 5–7 and Ex. A).[5] That breached Bank's obligation to ABC, for as *United States v. Kucik*, 844 F.2d 493, 496 (7th Cir.1988) (citations omitted) says:

A cashier's check is completely different [from an ordinary check], from the bank's standpoint, because it obligates the bank to pay a holder in due course, as an ordinary check does not.

· *    *    *    *    *    *

A cashier's check is an unequivocal, irrevocable promise by a bank to pay the face amount of the check to any holder in due course; the cases we cited earlier call it a bank's "bill of exchange."

But here ABC is trying "to make a federal case out of it" both literally and figuratively—and to do that it has to elevate its mere $2,000 in compensatory damages above the $10,000 floor required for diversity jurisdiction.

To make that leap ABC advances, in addition to its five counts asserting various theories to recover its $2,000 in actual damages, two counts seeking punitive damages:

1. Count 2 says Bank was "willful, wanton, malicious and oppressive" (Complaint ¶ 21) in converting ABC's funds, thus triggering the punitive damages referred to in n. 4 of this opinion.

2. Count 5 says Bank "acted maliciously and oppressively and with fraudulent intent, purpose and effect" (Complaint ¶ 36), again occasioning like punitive damages.

Those claims however are on doubtful paper, to say the least, in light of the April 19, 1988 demand letter sent by ABC's law firm to Bank, a letter that firm has seen fit to attach as Complaint Ex. B:

This will be our only communication with you and your only opportunity to informally resolve this matter. Demand is hereby made that your firm immediately express mail a certified bank check in the sum of $2,066.88 which includes the original sum of $1,962.09 for the certified check, $20.00 bank and company processing fees, $10.79 interest at 11% from March 28, 1988 to April 15, 1988 as well as $60.00 for phone calls made to your bank, the Chicago FDIC, ABC's customer Rod Williams, and $14.00 for express mailing of ABC's letter to you dated April 12, 1988.

---

**3.** "Less technical" is of course an imprecise usage here, because all subject matter jurisdictional considerations are by their nature "technical." Thus the term "technical" should not mistakenly be viewed as a pejorative label.

**4.** ABC's prayer for relief reconfirms that, for it asks for judgment only in that amount against Williams, while it also seeks at least $50,000 in punitive damages against Bank (of which more later).

**5.** ABC's Complaint incorrectly speaks of Bank's check as "certified," the term applicable to a check on which the bank's customer is the drawer (see UCC § 3–411, Ill.Rev.Stat. ch. 26, ¶ 3–411). In this instance Bank itself drew the check. From ABC's point of view as payee, to be sure, the legal consequence is the same: the right to look to the bank for payment.

In the event ABC does not receive said check by Thursday, April 21, 1988, we shall immediately institute an action against Matteson–Richton Bank, seeking, among other things, the amounts set forth above, attorneys' fees as well as punitive damages in the sum of $500,-000.00.

That smacks of an in terrorem rather than a legitimate punitive damages claim. This Court is not free to accept unquestioningly, especially under the circumstances, a complaint's assertion of the amount in controversy simply on the basis of plaintiff's self-selected ad damnum. *Ross v. Inter-Ocean Insurance Co.,* 693 F.2d 659, 660 (7th Cir.1982) teaches that even after judgment a federal court can and must raise such matters as the amount-in-controversy question sua sponte:

> At no time has either party, or the district court, questioned the existence of federal jurisdiction over the subject matter of this action. But we have a responsibility to determine independently, in every case, whether we have subject-matter jurisdiction, and to dismiss the case if we find we do not.

Though *Ross* dealt with the invocation of federal jurisdiction by a defendant via removal, rather than by a plaintiff in the first instance, the principle *Ross* announces applies with equal force: Jurisdiction depends upon whether "there is a reasonable possibility that the plaintiff can recover more than $10,000 on his claim, [in which event] the jurisdictional minimum is satisfied" (*id.* at 663). See also the seminal opinion in *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

If then ABC wants to try again in this District Court (but remember, it can do so only against Bank and not against Williams in any case), it must come prepared to show that similar conversion claims or fraud claims, with such a small principal amount at stake, have on occasion generated enough in punitive damages to bring the total amount in controversy over $10,000. And as for the fraud claim ABC must also be ready to say in good faith,[6] as Complaint ¶¶ 30 and 31 allege, that *"at the time"* Bank issued its cashier's check (thus making the express and implied representation that the check would be honored) it "had no intention of permitting ABC to cash the check." After all, that does seem an inherent improbability, for if that were really Bank's intention at the outset why would it have issued the check in the first place?

In sum, there are a number of reasons requiring dismissal of this action for lack of subject matter jurisdiction, and it is indeed dismissed on that ground. To avoid ABC's simply papering over the probably curable citizenship allegations, this opinion has pointed out the other hurdles it must deal with if it were to opt for refiling in this District Court. In all events, of course, this dismissal is without prejudice to ABC's bringing suit in a state court of competent jurisdiction.[7]

---

6. This term is used advisedly. Up to now only this Court has had to do any work, and neither ABC nor its counsel can be billed for it. If however Bank's counsel is brought into the matter and if it develops that ABC has had no objective good faith basis for invoking federal jurisdiction, ABC and its lawyers would face potential exposure for payment of the fees of Bank's counsel under Fed.R.Civ.P. 11.

7. Even though the Complaint was filed only this week, it may be that service has already been obtained on either or both defendants. To forestall their incurring needless expense in responding to the now-dismissed Complaint, this Court is contemporaneously transmitting copies of this memorandum opinion and order:
    1. To Bank at the address indicated in Complaint Ex. B and
    2. To Williams at the address indicated in Complaint Ex. C.